**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **ROBERT O'BRYANT,** *et al.*, : | |
| : | |
| **Plaintiffs,** : | |
| : | Case No. 2:19-cv-1354 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| : | Magistrate Judge Kimberly A. Jolson |
| **PILLARS PROTECTION SERVICES,** : | |
| **LLC,** *et al.*, : | |
| : | |
| **Defendants.** : | |

**FINAL APPROVAL ORDER**

Before the Court is the Parties' Joint Motion for Approval of Collective Action Settlement Agreement. (ECF No. 36). Based on the following, the Court hereby **ORDERS and ADJUDGES** that the motion is **GRANTED** and the Collective Settlement Agreement (the "Settlement Agreement") is **APPROVED**.

**I.    BACKGROUND**

This action for unpaid overtime wages brought pursuant to the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act O.R.C. Chapter 4111 ("OMFWSA") by Plaintiffs against their former employers, Pillars Protection Services, LLC and its sole owner, Timothy Brant. (ECF Nos. 1, 28). At all times relevant, Pillars provided security and private investigation services to the central Ohio region. (ECF No. 28, ¶ 18). Pillars provided a range of services, including private and commercial property patrol, event or social gathering patrol, fire watch and loss prevention, K-9 narcotics detection, and eviction/notice enforcement. Pillars employed Security Guards to carry out these services. (*Id.* ¶¶ 19-20). Pillars compensated its Security Guards on an hourly basis. (*Id.* ¶ 21). Security Guards clocked-in and clocked-out for

their shifts using "Sling," an application downloaded onto their cell phones. (*Id.* ¶ 22). Security Guards were assigned to worksites across the central Ohio region. Security Guards' shifts varied depending on the worksite to which he or she was assigned. (*Id.* ¶¶ 23-24). Prior to the start of a Security Guard's shift at certain worksites, Security Guards were required to drive from their homes to Pillars' office in Columbus, Ohio. (*Id.* ¶ 25). Upon arrival, Security Guards collected all items needed to perform their job duties at that particular site. (*Id.* ¶ 26). Such items could include patrol cars, keys to enable them to access the site (or certain areas within the site), site cell phones, and notebook binders containing standing orders and any other pertinent information about the site. (*Id.*).

Plaintiffs allege that they were not permitted to clock in until they reached their assigned site. (*Id.* ¶ 31). The sometimes position involved driving to a different site during a shift. But, Plaintiffs allege, they were required to clock out before leaving a site to drive to the next site during their shifts, and they were not paid for the time spent driving between sites. (*Id.* ¶ 32). In addition, Plaintiffs claim that they were not compensated for the time spent at Pillars' office to gather the necessary items at the beginning of the shift, nor dropping of the site materials at day's end. (*Id.* ¶ 28, 33).

Plaintiffs allege that they often worked more than 40 hours per week but were not paid for all time spent performing compensable work in excess of 40 hours per week, including these pre-shift and post-shift duties. (*Id.* ¶ 34). Plaintiffs say that they complained about Pillars' failure to pay overtime compensation. For example, Plaintiff O'Bryant raised his complaints to Pillars' owner and Operations Chief, Timothy Brant, in September 2018. (ECF No. 5-2, ¶ 20). Plaintiff O'Bryant explained that it was his understanding that the law required Pillars to pay its Security Guards from the time they began working to the time work concluded and for travel time. (*Id.*).

Mr. Brant told Plaintiff O'Bryant that he would investigate it but never responded to Plaintiff's complaint. (*Id.* ¶ 21). Plaintiff Bidlack, too, alleges that he complained about Pillars' failure to pay its employees properly. (ECF No. 5-3, ¶ 21). In August 2018, Plaintiff Bidlack complained to Sergeants McCarroll and Fagnon. (*Id.*). Plaintiff Bidlack stated that his understanding was that Security Guards were required to be paid from when they began working until the time that work concluded. (*Id.*). Defendants failed to address Plaintiff Bidlack's complaints and instead told him that it was just "part of the job." (*Id.* ¶ 22).

Plaintiff O'Bryant initiated this action on April 11, 2019, alleging that Defendant Pillars failed to pay him and similarly situated hourly employees for all wages earned, including overtime compensation at the rate of one- and one-half times their respective regular rates for hours worked in excess of 40 hours in a workweek. Specifically, Plaintiff O'Bryant alleged that he and other Security Guards employed by Pillars were not paid overtime compensation for time spent completing pre-shift and post-shift tasks and for compensable drive-time.

Plaintiff's first cause of action seeks relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, pursuant to that statute's opt-in provision, 29 U.S.C. § 216(b). Plaintiff O'Bryant also asserted claims under Ohio law: 1) failure to pay overtime, pursuant to OMFWSA, R.C. 4111.03, and 2) failure to tender pay by regular payday, pursuant to RC 4113.15. On July 10, 2019, Plaintiff moved the Court for an order conditionally certifying a class under the FLSA. (ECF No. 5). Pillars did not oppose Plaintiffs' request for conditional certification but opposed Plaintiffs' description of the putative class, the content of the proposed Notice to the putative class, and the proposed methods for disseminating the Notice. (ECF No. 9).

On August 15, 2020, the parties filed a Stipulation as to Plaintiffs' request for conditional certification. (ECF No. 12). The parties agreed to certify a collection action defined as follows:

Current or former Security Guards employed by Pillars, who worked at least thirty-five hours in any single workweek during the three years before August 29, 2019. The parties also presented the Court with an agreed-upon Notice to be distributed to all individuals who fit this description. (ECF No. 12-1). On August 29, 2019, the Court approved the parties' stipulation and proposed Notice. (ECF No. 13). The Notice period commenced on September 18, 2019. Following a 45-day opt-in period, thirteen individuals opted into the collective class, for a total of fifteen Plaintiffs.

On February 28, 2020, Plaintiffs filed a motion for leave to file an Amended Complaint. (ECF No. 23). During a phone conversation with counsel for Pillars on February 4, 2020, Plaintiffs' counsel learned that Pillars was no longer operating and was contemplating filing for bankruptcy. Accordingly, Plaintiffs moved to amend their complaint to name the sole owner of Pillars, Timothy Brant, as a defendant in this action. The Court granted Plaintiffs' motion on March 25, 2020. (ECF No. 27).

The Parties have engaged formal written discovery, as well as the informal exchange of information pertaining to Plaintiffs O'Bryant and Bidlack and all individuals who opted-in to the action ("Class Plaintiffs). Defendants provided payroll records for the Class Plaintiffs, as well as schedules containing dates of shifts worked, hours worked per shift, and worksites at which each Class Plaintiff worked. Using these records, the Parties complied damage calculations for Class Plaintiffs, includes estimates of overtime owed based on approximate drive time between Pillars' office and the worksites in question. The Parties submit that their investigation and exchange of information related to Plaintiffs' claims were sufficient to allow for counsel to evaluate their respective claims and defenses and to make appropriate recommendations regarding the resolution of this action. Following their investigation and exchange of information, the Parties engaged in arms-length settlement negotiation during a telephone mediation with Court-appointed Mediator,

Ralph Breitfeller, on May 26, 2020. The Parties did not reach a settlement during their phone calls with the Mediator but continued their settlement discussions and achieved an acceptable resolution. The Parties concluded that an amicable resolution was preferable, taking into serious account the cost and time associated with the action, as well as the uncertainty and risks inherent in any further litigation.

On June 2, 2020, the Parties filed a Stipulation of Partial Dismissal without Prejudice, dismissing the claims of opt-in Plaintiffs Plaul, Lawson, Arthur, Floyd, and Melcher. (ECF No. 35). The Parties determined that Class Members Angie Plaul and Kathryn Lawson were classified properly as salaried employees, exempt from the overtime mandates of the FLSA. As a result, these individuals were not entitled to recovery. Additionally, Class Members Johnny Arthur, Heather Floyd, and Joseph Melcher did not work at a jobsite at which Plaintiffs were required to engage in the alleged pre-shift and post-shift activities within the three-year statute of limitations period. Accordingly, these individuals were not entitled to recovery.

## II. LAW & ANALYSIS

As a general rule, "[t]he FLSA's provisions are mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). One exception is when a court reviews and approves a settlement agreement in a private action for back wages under 29 U.S.C. § 216(b). *Id.* The Court's role in approving an FLSA settlement, and an Ohio wage and hour settlement "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *See id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *5 (N.D. Ohio Mar. 8, 2010)). Hence, the Court must ensure

that there is a bona fide dispute between the parties and that the settlement is a product of arms-length negotiation that was fair, reasonable, and adequate. *See id.* at *5-6.

### A. Whether there was a Bona Fide Dispute Between the Parties

The requirement that there be a bona fide dispute between the parties stems from the need to ensure the parties are not negotiating around the FLSA's requirements concerning wages and overtime. *Id.* at *5.

Given the above, the Court is satisfied that the Settlement Agreement is not an attempt to negotiate around the FLSA's mandatory requirements of compensating employees for unpaid wages. The Agreement was achieved after extensive, good-faith investigation and arms-length negotiations between the Parties mediated by Mr. Breitfeller, as well as further settlement negotiations between counsel thereafter. During the course of these negotiations, the Parties concluded that there were questions that could cast doubt on the ultimate outcome of the litigation, as well as on the Plaintiffs' ability to collect on a judgment against Defendants after prolonged litigation. Under such circumstances, a presumption of fairness attaches to the Parties' proposed Agreement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354. There is no evidence of fraud or collusion that would undermine this presumption here. In this case, the Settlement Agreement resolves a bona fide dispute, is fair and reasonable to all parties, and is the product of contested litigation. The Settlement Agreement is therefore approved pursuant to Section 216(b) of the FLSA. *See* 29 U.S.C § 216(b).

### B. Whether Negotiations were Fair, Reasonable, and Adequate

In determining whether a proposed FLSA settlement is fair, reasonable, and adequate, a district court is required to consider and balance several factors: (a) Plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

(b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the judgment of experienced trial counsel; (e) the nature of the negotiations; (f) the objections, if any, raised by the class members; and (g) the public interest. *Kritzer*, 2012 WL 1945144, at *6. Here, the Court finds that the balance of factors weighs in favor of approving the Settlement Agreement.

### 1. Likelihood of Success

The most important factor the Court must consider when approving an FLSA settlement "is the plaintiffs' probability of success on the merits, particularly when weighed against the recovery provided in the proposed settlement agreement." *Id.* The lower the likelihood of success, the more desirable a settlement. *Id.*

Here, the parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's various defenses. Defendants deny any unlawful or improper conduct, the accuracy of Plaintiffs' claimed working time, the accuracy of the Parties' records related to the same, and whether Defendants maintained an unlawful policy related to clocking-in and -out for shifts. Because of the uncertainty surrounding Plaintiffs' likelihood of success, the Court finds that this factor weighs in favor of approval.

### 2. Complexity and Expense of Litigation

The second factor the Court must consider is the complexity and expense of potential litigation. Here, Plaintiffs faced multiple, and potentially expensive, hurdles to victory. While Plaintiffs believe that, if litigation were to continue, they would prevail on their claims, Defendants dispute liability, contend that Plaintiffs were paid correctly, and deny wrongdoing. Additionally, the range of recovery is in dispute, and Defendants contend that Plaintiffs would not be entitled to the liquidated damages and recovery for the entire three-year statute of limitations. Some of these

hurdles include overcoming a motion to dismiss, expensive discovery, potential losses during the decertification and summary judgment phases, and eventually a trial. The Settlement Agreement eliminates these burdens, and thus, weighs in favor of approval.

### 3. Stage of Proceedings

The third factor is intended to ensure Plaintiffs have had access to the information needed adequately to assess their case and the desirability of the Settlement Agreement. *See Kritzer*, 2012 WL 1945144 at *7. This case was settled after extensive investigation, written discovery, document exchange, and negotiation. Though the subject matter of the lawsuit was not unfamiliar to Plaintiffs' Counsel, Plaintiffs' Counsel has demonstrated a substantial commitment of time to this action during the previous year of litigation. The litigation was complex and required numerous hours to research thoroughly the claims and defenses, review payroll records and schedules, and calculate the damages sustained by the Class Members. Because Plaintiffs have had available to them all the information that they needed to make an informed decision about the settlement, this factor weighs in favor of approval.

### 4. Judgment of Experienced Counsel

By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate. The Court gives great weight to the beliefs of experienced counsel. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Accordingly, this factor weighs in favor of approval.

### 5. Nature of Negotiations

Before approving an FLSA settlement, the Court must be convinced that the parties' Settlement Agreement "is non-collusive and the product of arms-length negotiations." *Kritzer*,

2012 WL 1945144, at *7. Here, the Settlement Agreement is a product of a court-appointed mediation. The parties prepared mediation memoranda and spent a full day on May 26, 2020, negotiating a settlement with a well-respected court-appointed mediator. While that particular settlement was unsuccessful, the parties continued their settlement discussions following the mediation and achieved an acceptable resolution of the action. Given these representations, the Court is satisfied that the Settlement Agreement is a product of arms-length negotiations.

*6. Objections by Class Members*

In evaluating an FLSA settlement agreement, the Court is required to consider objections, if any, raised by class members. There have been no such objections in this case.

*7. Public Interest*

The final factor the Court must consider is whether the public interest would be served by settlement. Because the parties' Settlement Agreement would end potentially long and protracted litigation, the Court finds that this factor weighs in favor of approval. *Id.* at *8. ("While this case is not of general public interest, the public interest in favoring settlement certainly applies here, as the proposed settlement ends potentially long and protracted litigation.").

In sum, each of the seven fairness factors weighs in favor of approving the parties' Settlement Agreement.

### C. Whether the Attorneys' Fees Award is Reasonable

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). There are two methods for determining whether proposed attorney's fees are appropriate: the lodestar and the percentage-of-the-fund. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).

When using the percentage-of-the-fund method, Courts in this Circuit generally approve of awards that are 1/3 of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgt. Group, LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (approving of attorney's fees in the amount of 1/3 of the settlement fund). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id*.

When determining a reasonable rate using the lodestar method, courts use as a guideline "the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). A district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id*. Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Id*. at 501. Courts also frequently consider several factors in determining if attorney's fees are reasonable, including:

> (1) the value of the benefit rendered to the class, (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides.

*Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *15 (S.D. Ohio Feb. 7, 2014). The party seeking attorneys' fees bears the burden of documenting his entitlement to the award. *Id.* at 472.

Here, counsel for Plaintiffs expended, in total, $27,575. They request to receive an agreed-upon amount of $12,600, rather than the lodestar approach and they are thus willing to accept less

than the lodestar amount would yield. Further, the complexity of the litigation supports the award of the requested attorney fees. This case was settled after extensive investigation, written discovery, document exchange, and negotiation. This Court finds that the balance of factors weighs in favor of finding this amount reasonable.

### A. *Value of Benefits Rendered*

Plaintiffs' counsel achieved a good result for their clients since the settlement provides a significant benefit to the opt-in Plaintiffs through the payment of the overtime wages owed to the Class Members. This factor, therefore, weighs in favor of the proposed fees award.

### D. Societal Stake in Attorneys' Fees

The second factor, society's stake in rewarding attorneys who produce such benefits, also favors the proposed fees award. This is because "[s]ociety has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *See Kritzer*, 2012 WL 1945144, *9. Here, counsel was integral in helping Plaintiffs recover damages for unpaid wages. Were it not for the work of attorneys such as Plaintiffs' Counsel, the compensable work of a number of employees would remain unpaid.

### E. Whether Services were Undertaken on Contingent Fee Basis

Given that counsel took this case on a contingency fee basis, they "undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant recovery here." *See id.* Accordingly, this third factor favors the proposed fees award.

### F. Value of Services on Hourly Basis

As to the value of the services rendered on an hourly basis, this factor strongly weighs in favor of the proposed fees award. Plaintiffs' counsel requests an award of $12,600 and represents that they have billed approximately $27,575 across three attorneys for their work on this matter.

(ECF No. 91 at 25). Plaintiffs' counsel argues that this fee award is reasonable in light of the time, the complexity of the action, and the fact that they will continue to spend time on the matter in order to fulfill their obligations administering the settlement and responding to all Plaintiffs' inquiries. For these reasons, this Court determines that Plaintiffs received adequate representation at a reasonable rate.

### G. Complexity of Litigation

This case was settled after extensive investigation, written discovery, document exchange, and negotiation. Though the subject matter of the lawsuit was not unfamiliar to Plaintiffs' Counsel, Plaintiffs' Counsel has demonstrated a substantial commitment of time to this action during the previous year of litigation. The litigation was complex and required numerous hours to thoroughly research the claims and defenses, review payroll records and schedules, and calculate the damages sustained by the Class Members. Thus, Plaintiffs' Counsel request for fees is reasonable in light of the complexity of this litigation. This factor weighs in favor of the proposed fee award.

### H. Skill of Counsel

The professional skill and standing of the attorneys involved weighs in favor of the proposed fees award. Counsel has detailed the efforts that went into litigating and settling this case, as well as the reputation and skills of the lawyers involved. Accordingly, the Court finds that the proposed attorneys' fees and costs award is reasonable.

### I. Whether Plaintiff's Litigation Costs are Reasonable

Litigation expenses are estimated to be approximately $27,575, which includes extensive investigation, written discovery, document exchange, and negotiation. The expenses incurred were reasonable and necessary in resolving this case, and their reimbursement should be approved. *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014)

(reimbursing $39,406.46 in out-of-pocket litigation expenses that "were reasonable and necessary in connection with litigating and resolving this case and are reimbursable.").

### J. Whether the Representative Plaintiff's Service Payment Award is Reasonable

Service awards to representative plaintiffs in this Circuit are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997). Furthermore, Courts have established that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)); *see also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (explaining that among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Defendants have agreed to provide a Service Award of $1,000.00 each to Plaintiff O'Bryant and to Plaintiff Bidlack. These individuals provided information to Class Counsel, faithfully communicated with Class Counsel, and subjected themselves to the responsibilities of serving as representatives in a lawsuit against their employer. Additionally, Plaintiff's O'Bryant and Bidlack participated in preparation for mediation and the telephone mediation itself with counsel. Moreover, the proposed total of $2,000.00 in service awards set forth in the Settlement Agreement are within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, *20 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of

$10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *Abadeer v. Tyson*, 3:09-cv-00125, Dkt. 420 (M.D. Tenn. October 17, 2014) (approving service awards ranging from $500 to $11,500 for participating plaintiffs); *Bijoux v. Amerigroup N.Y.*, LLC, 2016 U.S. Dist. LEXIS 68969, *4 (E.D.N.Y. May 12, 2016) (awarding service payments between $2,000 and $10,000 to participating plaintiffs); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 2013 U.S. Dist. LEXIS 152087, *4 (W.D. Wis. Oct. 23, 2013) (approving service payments between $5,000 and $15,000 to named and participating plaintiffs in FLSA/Rule 23 hybrid action); *Hyun v. Ippudo USA Holdings,* 2016 U.S. Dist. LEXIS 39115, *6 (S.D.N.Y. Mar. 24, 2016) (finding service awards representing 5% of the settlement fund are "well within the range of service awards recently approved" in FLSA cases). Here, the requested service payments to the Representative Plaintiffs are appropriate.

## IV. CONCLUSION

Based on the representation to the Court by Counsel that the parties to this lawsuit have resolved their dispute, the parties agree that the terms of their settlement agreement need not be placed upon the record at this time, but a Dismissal Order dismissing this case with prejudice shall be filed not later than fourteen (14) days from the date of this Order.

This matter is now terminated by settlement and shall be considered, pursuant to Fed. R. Civ. P. 41, dismissed without prejudice as to all claims, until the parties file the above-referenced Dismissal Order dismissing this matter with prejudice, unless the case is reopened for good cause shown upon proper motion of one or more parties to this action. The Court will retain continuing jurisdiction over the settlement agreement.

The Court hereby directs the U.S. District Court Clerk to serve upon all parties notice of this judgment and its date of Order upon the journal.

For the reasons stated herein, the Court **GRANTS** the Joint Motion for Settlement Approval. (ECF No. 91).

**IT IS SO ORDERED.**

<u>December 17, 2020</u>             _____
**Date**                             **ALGENON L. MARBLEY**
                                     **CHIEF UNITED STATES DISTRICT JUDGE**